### EX PARTE TURNER.

1. All wills of personal property must be executed in writing ( *Gen. Stat.*, § 1854), except that nuncupative wills of a certain character and under certain conditions may be made as prescribed in section 1876.
2. Where a person just before his death, in his last illness, in the house in which he resided and died, called upon three bystanders to witness that it was his last will and wish on earth that his wife should have his whole estate after his death and the payment of his debts, and that T. should take charge of and manage his business, and see that his wife got it all—and these three witnesses reduced these words to writing, and duly proved them before the probate judge as the will of deceased, within five months of his death, the same was properly admitted to probate as a nuncupative will.
3. Findings of fact by a probate judge, approved by the Circuit Judge, affirmed.
4. Where testimony was objected to in the Probate Court, but on appeal no error was assigned for its admission, and the Circuit Judge made no ruling upon the subject, this court will not consider the objection.

Before WITHERSPOON, J., Edgefield, March, 1885.

To the statement of the case made in the opinion of this court, it will be proper to add only, that the testator died on December 21, 1883, and that the words in which he declared his last will were reduced to writing and sworn to by the three witnesses before the probate judge on May 14, 1884, and that they therein set forth the facts essential, under the statute, to the validity of a nuncupative will.

*Mr. Arthur S. Tompkins*, for appellant.

*Messrs. Sheppard Bros.*, contra.

February 22, 1886. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. J. N. Bouchelle, late of the County of Edgefield in this State, died in December, 1883. He left surviving a widow and several collateral kindred. On the night before his death (as it is alleged), after stating to the petitioner "that he did not believe he would live until next morning, so that he could get his will fixed," he said to the petitioner, to Mrs. Griffith, and Mrs. Graddick, all of whom were at his bedside: "I want you all to witness that it is my last will and wish on earth that my wife, Addie, shall have all my property of every nature and description after my death, and after my debts are paid. And you, Mr. Turner, to take charge of and manage my business, and see that she gets it all."

After the death of Mr. Bouchelle, the petitioner filed the petition below, stating the above facts, and also that said will of deceased was made in his last illness, in the house in which he resided, and had been reduced to writing within the time and according to the form prescribed by the law, and was attached to the petition as a part thereof. Wherefore he prayed that the same be admitted to probate under the law in such cases, and that he be appointed and authorized to carry out the same. Dr. L. B. Bouchelle, a brother of the deceased, is the only party who seems to have answered the petition. He denied the material allegations in the petition, and prayed that it be dismissed. He

seems, also, to have demurred on the ground that the petition did not state facts sufficient to constitute a cause of action. The probate judge, after testimony, admitted the will to probate as a nuncupative will.

From this judgment Dr. Bouchelle appealed to the Circuit Court. The case then came to trial before his honor, Judge Witherspoon, when by consent of parties the issue of fact, "will or no will," was submitted to a jury. His honor was requested to charge: "1st. That all wills and testaments of real and personal property shall be in writing, and signed by the party so devising the same, or by some other person in his presence, and by his express directions, and shall be attested and subscribed in the presence of the said devisor and of each other by three or more credible witnesses, or else they shall be utterly void and of none effect (*Gen. Stat.*, § 1854); except in case of soldiers and mariners in active service, and that they may dispose of their movables, wages, and personal estate as he or they might have done at common law. *Gen. Stat.*, § 1880. 2d. That the will proposed to be established cannot be established unless the same had been in writing and signed by the testator or some one by him authorized so to do, and attested by three witnesses." His honor declined to charge these requests. To the charge made there was no exception. The jury found for the will. His honor approved the finding, and affirmed the judgment of the Probate Court.

Dr. Bouchelle has appealed to this court, raising three questions: I. That the Circuit Judge erred in holding that a nuncupative will of the kind here was a good and valid will under the laws of this State. II. That he erred in affirming the judgment of the jury; and that the evidence was sufficient to establish the same. And, III. That he erred in holding that W. T. Turner and F. P. Griffith were competent witnesses.

Under the first exception, the appellant submits that there is no such thing in this State as a nuncupative will. It will be conceded that at common law, in early times in England, a will of chattels was good without writing. Such wills were allowed then, in part because of the inability of the people to write, or make wills in any other way but verbally. As, however, letters

and learning became more generally cultivated, and reading and writing more widely diffused, unwritten or nuncupative wills were confined to extreme cases, to wit, in cases of necessity. And at length, on account of the great frauds and abuses to which they were subject, and especially because of frightful perjury in a noted case, the statute of frauds (29 Charles II.) was enacted, regulating such wills, and declaring the mode and circumstances which would legalize them. 4 *Kent*, 517.

In 1712 the provisions of this act as to nuncupative wills were, in substance and almost in the precise words, enacted and made of force here. 2 *Stat.*, 528. In 1789, by act of assembly, it was enacted that no nuncupative will should be good, where the estate bequeathed shall exceed the value of ten pounds sterling, that is not proved by the oaths of three witnesses at least. 5 *Stat.*, 107. These acts recognized the existence of nuncupative wills at common law, and to prevent frauds and perjuries simply prescribed the conditions upon which they could be made, and the mode of having them put in form and established. Thus the law stood in this State until 1824, when it was enacted, "That from and after the first day of May (then ensuing), all wills or testaments of personal property shall be executed in writing and signed, * * or else they shall be utterly void and of no effect." 6 *Stat.*, 238. What effect this act had on the acts of 1712 and 1789, it is not necessary now to determine, because we find the act of 1789 incorporated in the General Statutes, both of 1872 and 1882. See, in last General Statutes, §§ 1876, '77, '78, and '79. The act of 1824, *supra*, is also incorporated. See § 1854.

These sections, when read separately, seem to conflict, but they are found in the same general act, which, upon this subject, must be construed as a whole. They should be made to harmonize if possible. We think this can be done by construing section 1876 *et seq.* as an exception or proviso to section 1854, to wit: That all wills of personal property shall be executed in writing * * (§ 1854), except that nuncupative wills of a certain character and under certain conditions may be made, as prescribed in section 1876. This view determines the question first raised.

The second raises a question of fact as to the force and effect of the testimony. We see no error here, even if this case could

be regarded as a case in chancery, and, therefore, bringing the facts under our cognizance. There was certainly testimony direct and positive upon the point submitted to the jury, sufficient to sustain the verdict, and to support its confirmation by the Circuit Judge.

As to the competency of Turner and F. P. Griffith as witnesses. While it does appear that they were objected to before the Probate Court, yet in the appeal from that court to the Circuit Court there is no error assigned in this respect to the ruling of the probate judge. Nor was there any motion made before the Circuit Court to strike this testimony out. In fact, it does not seem that the Circuit Judge made any ruling thereon. Such being the fact, no error can properly be assigned to him on account of its admission.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed.